IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01877-NRN

Y.A.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Y.A.[1] was not disabled for purposes of the Social Security Act. AR[2] 27. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #17.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##11, and 11-1 through 11-9.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of carpal tunnel syndrome; depression; anxiety disorder; attention-deficit hyperactivity disorder ("ADHD"); and post-traumatic stress disorder ("PTSD"). AR 35. Plaintiff's additional impairments of hypothyroidism; right knee osteoarthritis/medial meniscus tear; right lung nodule; and substance use disorders in long-term sustained remission were deemed non-severe. *Id.*

The ALJ determined at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

listed impairments in the regulations. *Id.* Relevant to this appeal, the ALJ determined that the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings for depressive, bipolar, and related disorders (Listing 12.04), anxiety and obsessive-compulsive disorders (Listing 12.06), neurodevelopmental disorders (Listing 12.11), or trauma- and stressor-related disorders (Listing 12.15). AR 35–38.

Because he concluded that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b), in that she can lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours; stand for six hours; walk for six hours; except she can frequently handle and feel bilaterally; can frequently tolerate exposure to extreme cold; is able to perform simple, routine tasks only; and is able to tolerate few changes in a routine work setting, defined as having a set schedule and a set workstation.

AR 38.

The ALJ found that Plaintiff is unable to perform her past relevant work as cable installer, home caregiver, driver, and project coordinator/electronic sales and service technician. AR 46. Considering Plaintiff's age, education, work experience, and RFC, and in light of the testimony of a vocational expert ("VE"), the ALJ determined that there are other jobs that exist in significant numbers in the national economy that she can perform, including bench assembler, laundry folder, and hand packager. AR 47. Accordingly, Plaintiff was deemed not to have been under a disability from January 20, 2018 through December 9, 2020, the date of the decision. AR 48.

## Analysis

Plaintiff argues that the ALJ incorrectly determined that she was not disabled on several grounds. First, she claims that the ALJ did not properly evaluate the medical opinion evidence and therefore did not adequately account for Plaintiff's mental health limitations in the RFC. Next, Plaintiff contends that the ALJ did not fully develop the record regarding her physical limitations. Finally,[4] Plaintiff argues that the ALJ's reliance on the VE's testimony conflicted with the RFC. The Court will address each argument in turn.

**I. Evaluation of Medical Opinion**

Plaintiff claims that the ALJ failed to appropriately evaluate the opinion of Jacqueline A. Worsley, Psy. D. The Court disagrees.

Effective March 27, 2017, the regulations governing the procedures and standards for evaluating evidence, including medical source opinions, changed. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Plaintiff filed her claim in 2018, the ALJ applied the revised regulations.

Under the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4)

---

[4] At the hearing, Plaintiff withdrew a fifth argument centering on separation of powers.

specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

Dr. Worsley evaluated Plaintiff on April 27, 2018. In her Medical Source Statement, Dr. Worsley opined that Plaintiff is able to understand and remember simple instructions, but would have more difficulties with detailed instructions; that she can carry out simple instructions and maintain attention for shorter periods of time, but would have difficulties with detailed instruction or maintaining attention for extended periods; and that with secure transportation she could maintain regular attendance, but she would not be able to complete a normal work week without interruptions from

5

symptoms. AR 441. Plaintiff's purported inability to complete a normal week of work would be work-preclusive according to the VE's testimony. AR 79.

The ALJ found this opinion "somewhat persuasive." AR 44. He noted that while Dr. Worsley's examination was "in part supportive of the opinion, there was no evidence of difficulty with concentrating, persisting or maintaining pace during the examination." AR 44. The ALJ went on to state that the "longitudinal medical evidence set forth above is not entirely consistent with the opinion and demonstrates that the claimant is less limited to perform simple, routine tasks only; and is able to tolerate few changes in a routine work setting, defined as having a set schedule and a set workstation." *Id.* The ALJ concluded,

> Overall, the mental status examination findings do not reflect more than moderate difficulty in understanding, remembering or applying information, and her activities of daily living support that she is less limited to perform simple, routine tasks only; and is able to tolerate few changes in a routine work setting, defined as having a set schedule and a set workstation[.]

*Id.* The ALJ then recounted, in detail and as he did several times in his decision, Plaintiff's activities of daily living:

> With regard to activities of daily living, the claimant testified that she took care of her two dogs and she helped care for her mother with whom she lived, noting her mother had an issue with her brain dying, although her mother could function on her own, and her father was okay. The claimant indicated she liked to walk her dogs for about 10 minutes up the street and back, although her knees were bad. She stated she washed dishes, cleaned up and mopped. She noted she was responsible for cleaning her own room and taking care of her dogs. The claimant indicated that her hobbies included adult coloring books and spending time with her dogs. She said she watched a little bit of television, although she was "all over the place" due to ADHD. The claimant indicated she did not have a car, but she used cabs for transportation. She said she went to the Mind Springs clubhouse three times per week to socialize with groups, and she would hang out there with friends, color independently, and talk with groups about life's "ups and downs" and addiction. She noted she went there for less than a year (Hearing). During her psychological consultative examination, she indicated she noted that she took care of two dogs, took her partner to work unless

>her partner went in late. She said her partner took her to the dog park and hiking, or they would watch a movie or talk. She noted she cleaned and cooked dinner. She reported she was able to complete her personal hygiene independently. While she said she did not manage the finances, she said she could handle cash and count change. (Ex. 4F). According to the claimant's function reports, she played games on her phone, cleaned weekly (vacuum, dust, and dishes), washed laundry weekly, made simple meals daily, and walked her dogs two to four times per day (Exs. 5E, 9E). The claimant indicated she played with her dogs, watched television and played video games intermittently all day and colored. She admitted she was able to do her own personal care independently. She acknowledged she shopped in stores for food and household supplies once every other week to once per month for three hours, although she did not go out alone. The claimant admitted she could count change, and she initially indicated she could adequately follow written instructions that were short and simple. She denied having problems getting along with others

*Id.*

The Court finds that the ALJ complied with the regulations. The supportability factor is discussed. The ALJ determined that some of Dr. Worsley's findings were supported by her examination. For example, the ALJ agreed that Plaintiff should be limited to simple, routine tasks, and that she cannot adapt to workplace changes. However, he also stated that Dr. Worsley's opinion that Plaintiff would not be able to maintain attention for extended periods or complete a normal workweek was not borne out by the examination. This determination is supported by substantial evidence. Dr. Worsley observed that Plaintiff's "thought process was clear and goal-directed," "no delusion though content was noted," Plaintiff's "speech was organized with a normal tone and rate," her "insight and judgment appeared to be within normal limits," and "[s]he seemed to be able to adequately concentrate and shift mental focus."

As to consistency, the ALJ states that the longitudinal record is more consistent with his RFC than Dr. Worsley's more sweeping limitations. The ALJ discussed Plaintiff's medical history in some detail. AR 40–43. While Plaintiff sometimes presented

as depressed, anxious, and experiencing memory problems, and in 2019 she was hospitalized for suicidal ideation, medical records also show a general improvement of her conditions and normal mental status examinations. The ALJ also discussed Plaintiff's relatively robust activities of daily living. Ultimately, the ALJ did not ignore or deny Plaintiff's mental health diagnoses; he agreed that she had several severe impairments. He just did not find them as debilitating as Dr. Worlsey. This is the type of determination that the ALJ is empowered to make, and so long as it is supported by substantial evidence, as it is in this case, it should not be disturbed, even if the Court or a different ALJ may have weighed things differently.

Plaintiff objects on procedural grounds that the ALJ's reasoning on the consistency factor was not sufficiently specific to allow for review on appeal because he generally referred to the "longitudinal medical evidence set forth above." This does not require remand. "Where, as here, [the reviewing court] can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Relying on medical evidence discussed earlier in the decision and apparent from the ALJ's decision itself does not constitute an impermissible post hoc justification. *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018). The ALJ could have, as he did with his lengthy summary of Plaintiff's activities of daily living, cut and pasted his 12-paragraph synopsis of Plaintiff's longitudinal treatment into his analysis of each medical opinion, but he was not required to. For ease of reading, the Court is grateful that he did not.

The Court concludes that the ALJ's determination that Dr. Worsley's opinion was "somewhat persuasive" is supported by substantial evidence and the ALJ, therefore, committed no error when the RFC did not account for more severe limitations as contained in Dr. Worsley's opinion.

## II. The Record of Plaintiff's Physical Limitations

Next, Plaintiff argues that the ALJ had the responsibility to develop the record as to Plaintiff's wrist pain. An ALJ must "ensure that an adequate record is developed . . . consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (internal quotation marks omitted). The Court notes, however, that Plaintiff did not list wrist pain as a medical condition when she applied for disability. AR 286. Nor did she testify as to any physical limitations during the hearing. AR 56–81. It is questionable, then, whether this issue was even "raised" before the ALJ. In any event, it remains Plaintiff's burden to prove she has a physical impairment that renders her disabled. *See* 20 C.F.R. § 404.1512(a).

The ALJ's duty to develop the record may require ordering a consultative exam, although the ALJ has "broad latitude" in determining whether to do so. *Hawkins*, 113 F.3d at 1166. In this case, Plaintiff was represented by counsel who, at the hearing, informed the ALJ that the record was complete. AR 59. "[I]f the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'" *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (quoting *Hawkins*, 113 F.3d at 1168); *see also Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("[W]e will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits

9

to the ALJ that the record is complete."). Here, it was not clearly established in the record that a consultative exam was needed.

Finally, the ALJ included carpal tunnel syndrome as a severe impairment and incorporated that into the RFC by limiting Plaintiff to light exertion work. This appears consistent with Plaintiff's activities, which included at least one bowling outing. Moreover, records from a 2020 neurology consult indicate that Plaintiff had normal motor strength and sensation in her extremities. AR 836–37. In other words, there is evidence in the record indicating that the physical limitation does not cause any functional impairment greater than that contemplated by the RFC.

Under these circumstances, the ALJ's inquiry was sufficient.

### III. VE Testimony

Finally, Plaintiff argues that each job proposed by the VE (bench assembler, laundry folder, and hand packager) requires a general education development (GED) reasoning level of two pursuant to the Dictionary of Occupational Titles (DOT), which conflicts with the ALJ's RFC limiting Plaintiff to simple, routine tasks only. The Court rejects this argument.

In *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), the court held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." *Id.* at 1087. This holding applies to skill level limitations as well as exertional limitations. *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005).

"Level-two reasoning requires the worker to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations.'" *Id.* at 1176 (quoting DOT, Vol. II at 1011). In other words, as Magistrate Judge Varholak stated, "the Tenth Circuit has noted that a 'level-two reasoning appears . . . consistent' with an RFC of simple and routine tasks." *Stone v. Berryhill*, No. 17-cv-02840-STV, 2018 WL 6566862, at *9 (D. Colo. Dec. 12, 2018) (quoting *Hackett*, 395 F.3d at 1176). Thus, unskilled work, as encompassed by the RFC here, is consistent with GED level two. Plaintiff acknowledges that the jobs listed require only level-two reasoning. Accordingly, there was no discrepancy for the ALJ to identify or explain. *See Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (rejecting argument is that an ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one).

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 9th day of May, 2022.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge